IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01915-MEH

MADISON PARK TOWNHOUSES HOMEOWNERS ASSOCIATION,

    Plaintiff,

v.

COUNTRY MUTUAL INSURANCE COMPANY,

    Defendant.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Defendant's Motion for Summary Judgment [filed June 8, 2015; docket #40]. The matter is fully briefed, and the Court heard oral argument on September 3, 2015. For the following reasons and based on the entire record herein, the Court **denies** the Defendant's motion.[1]

**BACKGROUND**

**I.  Procedural History**

Plaintiff Madison Park Townhouses Homeowners Association ("Madison Park") initiated this lawsuit against Defendant Country Mutual Insurance Company ("Country") on June 4, 2014 in Weld County District Court alleging essentially that Country "unreasonabl[y] delay[ed] and fail[ed] to pay in full covered benefits due and owing to Madison Park under its insurance policy."

---

[1] Pursuant to 28 U.S.C. § 636(c) and the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges, the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action. Docket #14.

Complaint, ¶ 3, docket #5. Country removed the action to this Court on July 9, 2014 asserting diversity jurisdiction; at the same time, Country filed an Answer to the Complaint. Dockets ##1, 2.

The case proceeded through discovery, and Country timely filed the present motion for summary judgment arguing Madison Park failed to satisfy the subject insurance policy's ("Policy") notice requirements, and the applicable limitation clause bars Madison Park's claims as a matter of law. In the alternative, Country contends Madison Park failed to satisfy express conditions precedent to coverage and, thus, Madison Park's claims fail as a matter of law. *See* Motion, docket #40.

Madison Park counters that Country improperly relies on a "forfeiture provision" of the policy, which "can be limited or nullified upon appropriate findings," and the doctrines of "impossibility of performance," "prevention of performance," "reasonable expectation," waiver and estoppel, as well as public policy and Country's breach, preclude enforcement of the provision. *See* Response, docket #45.

Country replies that Madison Park's affidavit contradicts the affiant's deposition testimony so fails to create a genuine issue of material fact. In addition, Country argues Madison Park concedes the notice date of loss occurred after the 180-day deadline for such notice in the policy for replacement cost benefits. Further, the affiant (Madison Park's property manager) testified during his deposition that he read all relevant portions of the policy and understood that replacement costs were not payable until the damaged property was actually replaced. In addition, Country asserts the "suit limitation" provision is not a "forfeiture provision" under the law, and Madison Park's preclusion from recovering replacement costs is the result of its own conduct. *See* Reply, docket

#47.

## II. Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to the Madison Park, which is the non-moving party in this matter.

1. Madison Park is a community of townhouses located in Longmont, Colorado, comprised of twelve separate residential buildings (designated as buildings A through L), each building consisting of at least two units.[2]

2. Kevin Lucas of Foster Management is a property manager retained by Plaintiff Madison Park Townhouses Homeowner's Association and was providing management services to the Madison Park community at all times relevant here.

3. Country issued to Madison Park property insurance policy No. AM 9084890 01, which provided certain coverages, including coverage for direct physical loss of or damage to covered property, subject to certain limitations, conditions and exclusions.

4. On January 31, 2013, Mr. Lucas provided to Country notice of a loss involving hail damage to the roofs of two buildings (Building C and Building I) in the Madison Park complex.

5. The Notice of Claim lists the "Date of Claim" as September 15, 2012; Mr. Lucas testified that this date was a guess made "out of the clear, blue sky." Deposition Transcript of Kevin Lucas, March 6, 2015 ("Lucas Depo"), 37: 4-17, docket #40-3.

6. Country subsequently assigned a date of loss of June 6, 2012 to the claim because that was

---

[2]Unless citations are otherwise noted, the parties have stipulated to these facts. *See* dockets ##40, 45.

the most recent date with storm activity in the area of the insured property. Country Mutual Repair Estimate, docket #40-9 at 1.

7.      June 6, 2012 is the date of loss used by Country and Madison Park throughout the claims adjustment process.

8.      Madison Park had purchased the optional replacement cost coverage from Country.

9.      On February 13, 2013, Country adjuster Josh Rice inspected the buildings for which Madison Park was claiming hail damage and created an estimate (building F was not inspected because its roof had been replaced previously and the parties agreed it was not damaged). Country Mutual Repair Estimate, docket #40-9 at 1.

10.     The Repair Estimate provides,

> If your claim was settled at actual cash value you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss. If you have given us your intent within the 180 days, you then have two years from the date of loss to make repairs noted on this estimate and to request payment for the difference between actual repair costs and the amount we already paid.

*Id.*

11.     Country determined that the Actual Cash Value ("ACV") of the covered loss for the damaged buildings was $37,077.74, and intended to issue a check to Madison Park for that amount on February 26, 2013.

12.     Mr. Rice corresponded with Mr. Lucas by email on February 26, 2013 and by mail February 27, 2013 citing the Policy provisions explaining the requirements for Replacement Cost Value ("RCV") payments, saying they may be made only "if you notify us of your intent to do so within 180 days after the loss or damage." Correspondence from Josh Rice to Kevin Lucas, docket #40-12.

13.     On February 26, 2013, Mr. Lucas asked Mr. Rice not to issue the ACV payment until Mr.

4

Lucas had a chance to discuss the insurance claim with the homeowner's association (HOA) board.

14.     Having had no communication with Madison Park, Mr. Rice sent a letter dated March 25, 2013, informing Madison Park that he "was closing your claim without payment at this time. Please contact me if you decide that you want to pursue the claim. You have 24 months from the date of loss to pursue your damages." March 25, 2013 Letter from Josh Rice, docket #40-13 at 2.

15.     Madison Park's Public Adjuster, Bill McLoughlin, sent a letter dated October 25, 2013 to Mr. Rice at Country (docket #40-15), with a Sworn Statement in Proof of Loss (docket #40-1), both asserting that the date of loss was December 31, 2011 based on his weather data.

16.     In the October 25, 2013 letter, Mr. McLoughlin asserts that the date of loss was likely not June 6, 2012, because the hail and wind associated with that weather event were not significant enough to cause damage to the roofs.  October 25, 2013 Letter from McLoughlin to Rice, docket #40-15.

17.     The Sworn Proof of Loss sought RCV benefits in the amount of $462,555.08, not including the applicable $5,000.00 deductible.

18.     The October 25, 2013 letter from Plaintiff's public adjuster also asked the property be re-inspected.

19.     On October 28, 2013, Mr. Rice responded to Mr. McLoughlin's correspondence, issuing payment for the ACV of the loss and explaining that RCV coverage was unavailable because more than 180 days had passed from the date of loss and the claim for RCV.

20.     Country received no other communications from Madison Park until February 5, 2014 when Brad Hancock, another public adjuster retained by Madison Park, sent an email rejecting Country's ACV payment and stating that Madison Park was scheduled to begin replacement of the roofs at the

property pursuant to Mr. McLoughlin's estimate on February 10, 2014.

21. A re-inspection of the property occurred on May 8, 2014. Based on the re-inspection and additional information from Madison Park, Country adjusted the ACV loss amount for Buildings C and I, which by that time had been replaced, and issued additional ACV payments for $8,450.86 and $4,938.55 for those buildings.

22. Country then issued supplemental ACV payments totaling $75,079.21 for the remaining buildings, based on subsequent re-inspections.

23. Coverage under the Policy is subject to the following conditions:

    E.     Property Loss Conditions

        3.     Duties In The Event Of Loss Or Damage

            a.     You must see that the following are done in the event of loss or damage to Covered Property:

            ***

            (2)     Give us prompt notice of the loss or damage. Include a description of the property involved.

            (3)     As soon as possible, give us a description of how, when and where the loss or damage occurred.

            ***

            (7)     Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

            (8)     Cooperate with us in the investigation or settlement of the claim.

            ***

        4.     Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

        a.        There has been full compliance with all of the terms of this insurance; and

        b.        The action is brought within two years after the date on which the direct physical loss or damage occurred.

Business Owners Coverage Policy, docket #40-6.

24. Payment of covered losses is governed by the following conditions:

    5.    Loss Payment

    In the event of loss or damage covered by this policy:

        a.        At our option, we will either:

            (1)    Pay the value of lost or damaged property;

            (2)    Pay the cost of repairing or replacing the lost or damaged property;

            (3)    Take all or any part of the property at an agreed or appraised value; or

            (4)    Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph d.(1)(e) below.

        b.        We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

        c.        We will not pay you more than your financial interest in the Covered Property.

        d.        Except as provided in Paragraphs (2) through (7) below, we will determine the value of Covered Property as follows:

            (1)    At replacement cost without deduction for depreciation, subject to the following:

                * * *

                (c)    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still

>   > make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.
>
>   (d) We will not pay on a replacement cost basis for any loss or damage:
>
>      (i) Until the lost or damaged property is actually repaired or replaced; and
>
>      (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

*Id.*

25. "Prompt notice" is not defined in the Policy. *Id.*

26. Madison Park informed Country that it intended to replace all of the roofs and planned to do so two at a time. That is, once the RCV insurance benefits for two roofs were paid to Madison Park, it would have enough money for a down payment on the next two roofs. This was to continue until all roofs were replaced. Otherwise, Madison Park did not have the money to complete repairs. Affidavit of Kevin Lucas, July 15, 2015 ("Lucas Affidavit"), ¶ 14, docket #45-1.[3]

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit

---

[3]Country argues in its reply brief that paragraphs 15-17 of Lucas' affidavit should be disregarded as contradictory to his deposition testimony under the sham affidavit doctrine. Country points to Lucas' deposition transcript "attached to Country's [motion] as Exhibit C, at 84:6-86:18." *See* Reply, docket #47 at 4-5. However, Exhibit C does not include pages 84-86. *See* docket #40-3.

under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56, the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* Only admissible evidence may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an

affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The Court begins its analysis by addressing certain factual statements it does not accept based on errors or discrepancies in the record. First, Madison Park asserts that since the date of loss is June 6, 2012 and the lawsuit was filed "June 4, 2012," it timely filed the action pursuant to the Policy. *See* Response, Statement of Additional Facts, ¶ 5, docket #45. This is likely a typographical error and here, of course, the action was filed June 4, 2014; thus, assuming without finding that the date of loss was June 6, 2012, Madison Park would be correct. However, as set forth above, Country provides a sworn statement from Madison Park's agent that the loss occurred December 31, 2011; accordingly, this appears to be a disputed fact.

Madison Park also states that it "sent a Proof of Loss to the insurance company on October 16, 2013 but" (Lucas Affidavit, ¶ 13) Country "failed to notify Plaintiff of its intentions within 30 days of receiving the proof of loss as required by policy" (Statement of Additional Facts, ¶ 6). However, Madison Park admitted Country's Fact Statement #18 that Mr. Rice (Country's representative) responded to Mr. McLouglin (Madison Park's representative) and the Proof of Loss on October 28, 2013, and issued payment for the actual cash value of the loss. Response, docket #45 at 3. Due to this discrepancy, the Court does not accept Madison Park's factual statement. The Court finds disputed all other factual statements it did not accept; thus, the question is whether such

factual disputes are material to the disposition of this case.

With respect to the parties' legal theories, the Court rejects Madison Park's argument that Country's attached documents are not admissible because they have not been authenticated. In fact, documents submitted in support of summary judgment are no longer required to be authenticated. *See* Fed. R. Civ. P. 56(c)(2); *see also Deakins v. Pack*, 957 F. Supp. 2d 703, 717 (S.D. W. Va. 2013) (citing *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 243 (D. D.C. 2012), *aff'd*, 2012 WL 4774676 (D.C. Cir. 2012)). Notably, Madison Park does not dispute the content of the attached documents unless otherwise set forth herein.

The Court also does not accept Madison Park's argument that "the two[-]year provision relied upon by Country Mutual is a forfeiture provision" which can be "limited or nullified upon appropriate findings" (Response, docket #45 at 5-6) because the argument is based on an incorrect understanding of Country's motion.[4] That is, Madison Park understood Country to argue that "Madison Park forfeited the right to recover replacement cost benefits because the work was not completed in two years." *Id.* at 6. However, Country reaffirmed in its reply brief it argues instead that Madison Park's breach of contract claim should be dismissed because Madison Park did not meet the two-year limitation provision for filing a lawsuit after the December 31, 2011 date of loss, did not meet the 180-day deadline for filing a claim for RCV benefits, and has not demonstrated that replacement of the damaged property has occurred, all as required by the policy. Country also contends the extra-contractual claims are barred without the breach of contract claim. The Court will address each of these arguments in turn.

---

[4]Madison Park cites *Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684, 687 (Fla. Dist. Ct. App. 2014), which explains, "[a] forfeiture occurs when the loss was covered in the first instance and has been lost by the insured's actions or inactions."

11

**I.      Two-Year Suit Limitation Provision**

The subject Policy in this case provides: "No one may bring a legal action against us under this insurance unless (a) there has been full compliance with all of the terms of this insurance; and (b) the action is brought within two years after the date on which the direct physical loss or damage occurred." Business Owners Coverage Policy, E.4.

Country spends nearly a full page of its 7-1/2 page reply brief arguing that its evidence refutes Madison Park's testimony regarding the date of loss; however, this demonstrates only that the actual date of loss is disputed by the parties. In fact, Country concedes in its motion that "[t]here is a question of fact as to the date of loss." Motion, docket #40 at 1-2. Accordingly, whether the lawsuit was filed within two years of the date of loss is a question not properly resolved under Rule 56.

**II.     180-Day Deadline for Filing RCV Claim**

As pertinent to this argument, the Policy provides:

E.      Property Loss Conditions

   5.      Loss Payment

In the event of loss or damage covered by this policy:

   a.      At our option, we will either:

      (1)      Pay the value of lost or damaged property; [or]

      (2)      Pay the cost of repairing or replacing the lost or damaged property;

Business Owners Coverage Policy, E.5.a. The undisputed facts of this case reveal that Kevin Lucas of Madison Park notified Country on January 31, 2013 of a loss due to hail and wind. Country identified the date of loss as June 6, 2012 based on its weather data. On February 13, 2013, Country

Adjuster Josh Rice inspected the buildings for which Madison Park was claiming hail/wind damage and created an estimate, from which Country determined that the ACV of the covered loss for the damaged buildings was $37,077.74. Country intended to issue payment to Madison Park for that amount on February 26, 2013. Accordingly, these facts demonstrate Country opted to pay under paragraph E.5.a.(1) of the Policy.

Country argues that Madison Park is not entitled to additional payment for the RCV of the damaged property pursuant to paragraph E.5.d.(1)(c) of the Policy, which provides:

> (c)   You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. ***In the event you elect to have loss or damage settled on an actual cash value basis***, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

Business Owners Coverage Policy, E.5.d.(1)(c) (emphasis added). Likewise the Repair Estimate created by Mr. Rice states:

> ***If your claim was settled at actual cash value*** you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss. If you have given us your intent within the 180 days, you then have two years from the date of loss to make repairs noted on this estimate and to request payment for the difference between actual repair costs and the amount we already paid.

Country Mutual Repair Estimate, docket #40-9 at 1 (emphasis added).

With respect to these provisions, the undisputed facts demonstrate that on February 26, 2013, Mr. Lucas asked Mr. Rice not to issue the ACV payment until Mr. Lucas discussed the insurance claim with the HOA board; then, having had no communication with Madison Park, Mr. Rice sent a March 25, 2013 letter informing Madison Park that he "was closing [the] claim without payment at this time. Please contact me if you decide that you want to pursue the claim. You have 24 months from the date of loss to pursue your damages." On October 25, 2013, Madison Park's public

adjuster sent a sworn statement of proof of loss to Country seeking RCV benefits; Mr. Rice responded on October 28, 2013 contending that RCV benefits were not available and issuing a payment for ACV benefits. Thereafter, Country issued several additional ACV payments.

Based on these facts, the Court finds that paragraph E.5.d.(1)(c) of the Policy does not apply here. In fact, when read in its entirety, paragraph E.5.d.(1) specifies that Country will determine *first* the value of the covered property "at replacement cost without deduction for depreciation" or, in other words, replacement cost is the "default" method for determining the value of the covered property. Defense counsel confirmed at the hearing this is a correct reading of the Policy. Subparagraph (c) then permits the insured to "make a claim for loss or damage covered by this insurance on an actual cash value basis *instead* of on a replacement cost basis" and if "you elect to have loss or damage *settled* on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage." Policy, ¶ E.5.d.(1)(c) (emphasis added). Here, Madison Park never made a claim or election for ACV payments; rather, Country opted to pay ACV benefits, but Madison Park never accepted nor cashed the checks.

The Court concludes Country has failed to demonstrate that paragraph E.5.d.(1)(c) applies to the facts presented as a matter of law; accordingly, summary judgment is improper on this issue. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050-51 (Colo. 2011) (en banc) ("insurance policies must be given effect according to the plain and *ordinary* meaning of their terms") (emphasis in original) (internal quotation marks and citation omitted).

**III.   Replacement of Damaged Property**

The Policy provides: "We will not pay on a replacement cost basis for any loss or damage: (i) until the lost or damaged property is actually repaired or replaced; and (ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Business Owners Coverage Policy, E.5.d.(1)(d).

Madison Park essentially concedes that the damaged roofs have not been replaced because it does not have the money to pay for replacement. Madison Park relies on the "impossibility of performance" doctrine for its argument that "finishing the repairs ... was impossible because Madison Park could not afford to do so with no commitment from Country Mutual that it would be reimbursed under the policy." Response, docket #45 at 7.

Country counters that the impossibility of performance doctrine does not apply to this case because Madison Park's inability to perform results from its own conduct. Country points to Madison Park's failures (1) to notify Country of the loss within 180 days; (2) to explain the seven-month delay by the Public Adjustor McLoughlin in submitting a Sworn Proof of Loss; (3) to explain or document why it was impossible to replace the subject roofs within six months of the loss, particularly because financial inability is not "impossible" under the law; and (4) to notify Country of any alleged impossibility until the briefing on the present motion.

"Impossibility of performance is determined by whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." *Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1165 (Colo. App. 1990) (citing *Littleton v. Emp'rs Fire Ins. Co.*, 453 P.2d 810 (Colo. 1969) (en banc)) (internal quotation marks and ellipses omitted). Generally, a change in economic circumstances does not excuse performance of a contract. *Id.*; *see*

*also Seago v. Fellet*, 676 P.2d 1224, 1227 (Colo. App. 1983) (where an intervening government action merely renders performance more costly, a party is not excused under the doctrine of impossibility). Rather, situations that are "so unforeseeable as to be outside the risks assumed under the contract" may excuse a party's performance because of impossibility or impracticability. *Ruff v. Yuma Cnty. Transp. Co.*, 690 P.2d 1296, 1298 (Colo. App. 1984).

Here, Madison Park argues "the whole policy scheme is based on the fundamental proposition that the policy holder receives upfront payments to begin the work and a commitment from the insurer to repay the amounts incurred at a later date." Response, docket #45 at 7. The Court disagrees with the former statement – the Policy's plain language informs the insured that Country will not pay RCV benefits "until the lost or damaged property is actually repaired or replaced." Business Owners Coverage Policy, E.5.d.(1)(d). Nothing in the Policy suggests that "upfront" payments would be made on an RCV basis. *Id.*

Madison Park's latter statement refers to Country's refusal to pay RCV benefits in this case despite Madison Park having purchased "replacement costs" insurance coverage, and it argues such refusal rendered its ability to perform (repair or replace damaged roofs) impossible or impracticable. Madison Park asserts, "Without the payments [from Country], or the commitment to pay, Madison Park was left with damages that it could not itself afford to repair. These frustrated the purpose of the decision to purchase insurance in the first place and rendered the required performance under the policy vitally and materially different." Response, docket #45 at 7.

Notably, when Country issued the ACV payment on October 28, 2013, Mr. Rice relied on paragraph 5.d.(1)(c) of the Policy in determining, "Since the date of loss is more than 180 days from when the claim was reported, Actual Cash Value will apply to this loss." Docket #40-16. In fact,

Mr. Rice testified that he did not pay RCV benefits on this claim "[b]ecause the first payment on any claim is ... the actual cash value amount of the damages." Deposition of Joshua Rice, March 3, 2015 ("Rice Depo"), 46: 1-6, docket #40-11. Thus, it is undisputed that Country did not, and has not, committed to pay RCV benefits to Madison Park.

Country counters that Madison Park did not comply with the Policy, provision E.5.d.(1)(d), by not replacing or repairing the roofs. However, the term "unless the repairs or replacement are made as soon as reasonably possible after the loss or damage" is not defined in the Policy and is ambiguous as to when, exactly, Madison Park must have repairs or replacement completed before becoming entitled to RCV benefits. Whether a time period is "as soon as reasonably possible" involves questions of fact that must be resolved by a jury.

## CONCLUSION

The Court concludes that genuine issues of material fact exist in this case precluding summary judgment, including:

1. What is the correct date of loss?
2. Did Country's refusal to pay RCV benefits under the Policy render Madison Park financially unable to complete repairs on the damaged roofs?
3. If repair or replacement has occurred, has it occurred or will it occur "as soon as reasonably possible"?

Accordingly, Defendant's Motion for Summary Judgment [filed June 8, 2015; docket #40] is **denied**.

ORDERED AND ENTERED at Denver, Colorado, this 8th day of September, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge